UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED HOUMA NATION, INC. | CIVIL ACTION |
| VERSUS | NO. 21-439 |
| TERREBONNE PARISH SCHOOL BOARD, *et al.* | SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion by defendants the Terrebonne Parish School Board (the "School Board"), Philip Martin, and Gregory Harding (collectively, the "School Board Defendants") to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff the United Houma Nation, Inc. ("United Houma") responds in opposition.[2] Having considered the School Board Defendants' memorandum, the record, and the applicable law, the Court issues this Order & Reasons granting the motion to dismiss for failure to state a claim under Rule 12(b)(6) and dismisses United Houma's federal claims with prejudice and its state-law claims without prejudice.

## I.  BACKGROUND

This case involves the School Board's sale of the Daigleville School property. The Daigleville School, located at 8542 East Main Street in Houma, Louisiana, has historical and cultural significance to United Houma, a 501(c)(3) non-profit organization "recognized as an

---

[1] R. Doc. 28.  Co-defendant Walter Guidry has not made any filing with respect to the motion but is obviously affected by the Court's evaluation of the claims that plaintiff also asserts against him.

[2] R. Doc. 39.  The School Board Defendants' motion to dismiss was set to be submitted to the Court on June 3, 2021.  R. Doc. 28-3.  Local Rule 7.5 requires that a memorandum in opposition to a motion be filed no later than eight days before the noticed submission date, which in this case was May 26, 2021.  United Houma filed its memorandum in opposition on June 3, 2021.  R. Doc. 39.  Although United Houma's opposition is more than a week late, the Court hereby grants United Houma leave to file the untimely opposition memorandum and will consider the arguments made therein.

Indian tribe by the State of Louisiana."[3] In 1962, the Terrebonne Parish School System ("TPSS") was triple-segregated with separate schools for whites, blacks, and Native Americans.[4] The Daigleville School was the Native-American high school, and the school from which the first Native-American students in the TPSS graduated.[5] The landmark is said to be unique in that it was an all Native-American school located outside of a reservation.[6]

In recognition of this history, on May 5, 2015, United Houma and the School Board entered into a cooperative-endeavor agreement (the "Agreement") regarding the Daigleville School.[7] Specifically, the School Board, which owned the school, granted United Houma "the use and occupancy of the Daigleville School Property for the sole purpose of housing and operating the cultural events, educational programs, and community outreach programs of" United Houma.[8] In return, United Houma agreed to maintain and repair the property, and pay for its utilities and insurance.[9] The first five-year term of the agreement lasted from May 6, 2015, to May 6, 2020, and was renewable "every five (5) years thereafter so long as [United Houma] utilizes the Daigleville School Property for the purposes set forth herein and [United Houma] repairs and maintains the building and grounds of the Daigleville School."[10] The agreement was never recorded.[11]

United Houma alleges that, upon signing the Agreement, it immediately began insuring the Daigleville School, maintaining the grounds, and making repairs.[12] In 2016, United Houma

---

[3] R. Doc. 1 at 1-3. The facts recited as background are largely taken from United Houma's allegations in its complaint.
[4] *Id.* at 3.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] R. Doc. 4-9 at 1.
[9] *Id.* at 1-2.
[10] *Id.* at 3.
[11] R. Doc. 15 at 5.
[12] R. Doc. 1 at 4.

partnered with the Proctor and Gamble Native American Network to make initial repairs and plan additional repairs to be performed in 2022.[13] In 2019, United Houma commenced the application for the school's listing on the National Register of Historic Places.[14] The School Board Defendants dispute these allegations contending that United Houma "did not utilize the property for the[] reasons [specified in the Agreement] at all, nor did it repair the property."[15]

United Houma alleges that the Agreement renewed automatically on May 5, 2020, for another five-year term because it never sent a written notice to the School Board requesting termination.[16] Consequently, United Houma continued to pay the insurance for the school.[17] Anticipating future repairs, United Houma alleges it left over $3,500 of repair equipment inside the building.[18]

On May 28, 2020, the School Board contacted United Houma to ascertain whether it wanted to renew the "expired lease."[19] United Houma's tribal administrator, Lanor Curole, responded the next day reminding the School Board of the automatic renewal, but nevertheless complied with the School Board's request for a written notification which was sent on June 10, 2020.[20]

On September 17, 2020, the School Board's buildings, food service, and transportation committee recommended selling the Daigleville School as surplus property.[21] On October 6, 2020, the School Board voted to empower itself to sell the Daigleville School.[22]

---

[13] *Id.* at 5.
[14] *Id.*
[15] R. Doc. 28-1 at 14.
[16] R. Docs. 1 at 6; 4-6.
[17] R. Doc. 1 at 6.
[18] R. Docs. 1 at 6; 4-5; 4-6; 4-15.
[19] R. Docs. 1 at 6; 4-28.
[20] R. Docs. 1 at 6; 4-4; 4-27.
[21] R. Doc. 4-24.
[22] R. Docs. 1 at 7; 4-13 at 7-8; 15 at 9.

At the same time, United Houma continued with its efforts to have the Daigleville School listed as a historic landmark. On October 21, 2020, the Daigleville School was officially listed on the National Register of Historic Places.[23] United Houma allegedly invited Martin, the superintendent of the TPSS, to participate in a meeting involving the final steps of the application process, but Martin chose not to attend.[24]

On November 9, 2020, the Daigleville School was appraised in preparation for its sale.[25] The School Board listed the school for sale on January 12, 2021, with a real estate agent.[26] That same day, Martin signed a resolution representing that the School Board was empowered to sell the property to Walter Guidry.[27] On February 1, 2021, Harding, on behalf of the School Board, signed the act of sale transferring ownership of the Daigleville School to Guidry.[28] United Houma alleges that the property was sold under value because it appraised for $195,000, and the School Board sold it to Guidry for $115,000.[29]

Later in February 2021, Curole observed boxes being taken from the school to the curb to be picked up as trash.[30] Additionally, Curole and tribal member, Tyler Duplantis, witnessed a blackboard being tossed out which they say is "the same blackboard used to teach the first Native Americans to ever graduate from high school in Terrebonne Parish."[31]

On March 2, 2021, United Houma filed this action alleging the following claims: (1) violation of its due process rights brought under 42 U.S.C. § 1983; (2) violation of the spirit and

---

[23] R. Docs. 1 at 7; 4-3.
[24] R. Doc. 1 at 7.
[25] R. Doc. 15 at 9.
[26] R. Doc. 1 at 7.
[27] R. Docs. 1 at 8; 4-18.
[28] R. Docs. 1 at 8; 4-13. The School Board asserts that at the time of sale the building did not have electricity. R. Doc. 15 at 5.
[29] R. Docs. 4-11; 4-13
[30] R. Doc. 1 at 8.
[31] R. Docs. 1 at 8; 4-4; 4-7.

public policy of the National Historic Preservation Act ("NHPA"); (3) possessory action; (4) breach of contract; and (5) wrongful eviction/conversion.[32] United Houma sought the return of its movable property and a declaration that the School Board's sale of the Daigleville School to Guidry was unconstitutional.[33] On March 24, 2021, United Houma filed its first amended complaint adding a sixth cause of action it calls "fraud resulting from silence," and also amending its § 1983 allegations to add conspiracy claims.[34]

## II. PENDING MOTION

The School Board Defendants move to dismiss United Houma's complaint for failure to state a claim under Rule 12(b)(6) and also for lack of subject-matter jurisdiction under Rule 12(b)(1).[35] They argue that United Houma cannot state a § 1983 claim for violations of the Fourteenth Amendment's procedural and substantive due process provisions because United Houma had no property interest in the Daigleville School, and thus, was not entitled to any due process.[36] The School Board Defendants also argue that United Houma has no claim under the "spirit" of the NHPA. Further, they contend that, once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over United Houma's state-law claims.[37]

In opposition, United Houma argues that it had a property right in the Daigleville School derived from the Agreement, the Louisiana State Historic Preservation Office's comprehensive

---

[32] R. Doc. 1 at 10-12.
[33] *Id.* at 13-14. United Houma also sought a temporary restraining order and other injunctive relief. *Id.* at 13; R. Docs. 4; 5. The Court denied United Houma's motion for TRO on March 11, 2021, R. Docs. 9; 10, and denied its motion for preliminary injunction on May 3, 2021, as moot because the sale of the Daigleville School had been rescinded. R. Doc. 26.
[34] R. Doc. 13 at 1-4.
[35] R. Doc. 28.
[36] R. Doc. 28-1 at 4-7, 10-11. Martin and Harding argue that they are entitled to qualified immunity with respect to the individual capacity claims against them, and that United Houma cannot prevail under the *Monell* doctrine as to the official capacity claims against them. *Id.* at 11-18. Also, all the School Board Defendants argue that United Houma's claims are moot since the sale of the Daigleville School to Guidry has been rescinded. *Id.* at 18-19. Because the Court finds that United Houma has not stated a § 1983 claim, it need not address these arguments.
[37] *Id.* at 8.

preservation plan, and the movables it left inside the building.[38]  According to United Houma, any one of these alleged sources of a property right was enough to entitle it to due process under the Fourteenth Amendment and it has alleged enough facts in the complaint to show that it is entitled to relief.[39]

### III.  LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads

---

[38] R. Doc. 30 at 1-6.

[39] *Id.* at 1-6, 8-14.  The rest of United Houma's memorandum addresses Rule 12(b)(1), qualified immunity, and the mootness of its claims.  *Id.* at 6-8, 14-20.  Given the Court's dismissal of the case under Rule 12(b)(6), it is unnecessary to address these issues.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

    **B. Analysis**

    **1. Section 1983 and the Due Process Clause of the Fourteenth Amendment**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48-50 (1988).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Procedural due process "requires a two-step analysis: first a court must determine whether the plaintiff has a protected liberty or property interest and then the court must determine whether the state has provided adequate procedures for the vindication of that interest." *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (citing *Wilkinson v. Austin,* 545 U.S. 209, 213 (2005)). Similarly, the existence of a protected property interest is a threshold issue for a substantive due process claim. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020). "If there is no protected property interest, there is no process due." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992). As the Fifth Circuit has recently articulated:

> In order to have a property interest in a benefit, "a person ... must have more than an abstract need or desire for it," and he must be able to establish "more than a unilateral expectation" that he would receive it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To succeed on his substantive due process claim, [a plaintiff] must show that he had a "legitimate claim of entitlement" to the interest he asserts. *Id.* Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Id.* However, whether a state-created property interest "rises to the level" of a constitutionally-protected interest is a matter of federal constitutional law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

*Wigginton*, 964 F.3d at 336.

The first step, then, is to determine whether United Houma has a property interest in the Daigleville School under state law or some independent source. United Houma asserts it has such an interest based on three separate sources: (1) the Agreement, (2) the Louisiana State Historic Preservation Office's comprehensive preservation plan, and (3) the movables it left inside the building.

The Agreement is a cooperative-endeavor agreement within the terms of article VII, § 14(C) of the Louisiana constitution, which permits the state, or a political body, to enter such

9

agreements with other entities "[f]or a public purpose." The Agreement at issue was initially entered by the parties for a five-year term that automatically renewed if United Houma utilized the Daigleville School for educational, cultural, and community outreach events and insured, repaired, and maintained it.[40] There is no allegation or evidence in the record that any events or programs were held at the Daigleville School during the relevant time. Moreover, the Agreement's provisions on "Maintenance and Repair" required United Houma, at its expense, to "repair and maintain in good repair the Daigleville School Property and all improvements located on said property, including foundation, parking lot, roof, interior and exterior walls, floors, ceilings, ducts, utilities, air-conditioning, heating, lighting, plumbing and mechanical."[41] While United Houma alleges it made some repairs in 2016 and made plans for additional repairs to be made in 2022, it makes no allegation and has provided no evidence that it has maintained the property in the condition of "good repair" required by the Agreement. To be sure, the School Board Defendants assert that the property was in "total disrepair" and without electrical power at the time of its sale to Guidry.[42] At the TRO hearing, Guidry was uncontradicted in confirming that the property was in a diminished state including roof damage and rotting floors.[43] By all indications, the Agreement lapsed in May 2020 as a result of United Houma's failure to perform its obligations. Thus, the Agreement did not afford United Houma a property interest in the Daigleville School.

Second, United Houma latches on to language in the Louisiana State Historic Preservation Office's comprehensive preservation plan to assert it has a vested interest in the property. The

---

[40] R. Doc. 4-9. United Houma argues that any constitutionally protected property interest created by the Agreement was essentially perpetual given the automatically renewing five-year terms. R. Doc. 39 at 3-4. However, United Houma's argument ignores the plain language of the Agreement which conditions renewal on United Houma's discharging certain, specified obligations. That United Houma told the School Board it intended to renew the Agreement was not adequate to effect a renewal that had been contingent upon United Houma's discharge of these obligations, which it ignored.
[41] R. Doc. 4-9 at 2.
[42] R. Doc. 15 at 5-6.
[43] R. Doc. 10 at 17.

plan reads in part: "Each of these groups [tribal organizations including the United Houma Nation] has a vested interest in the state's handling of sensitive archaeological sites and traditional cultural properties, especially ones that potentially contain human or cultural remains."[44]  This is merely a state agency's description of a specific aspect of Louisiana's preservation efforts.  It does not in any way convey to United Houma a property right in the Daigleville School (which is not even mentioned in the preservation plan).  The plan does not constitute a law or contract that creates or destroys property rights, nor does it purport to be.

Third, United Houma asserts it has a right to the movable property alleged to have been inside the building.  This movable property does not vest in United Houma any rights regarding the disposition of the Daigleville School itself.  Moreover, Guidry, on the record at the TRO hearing, agreed to allow United Houma access to the school to remove any of its movable property on the premises.[45]  Hence, any property interest United Houma might have had as to the movable property should be resolved but, regardless, does not extend to the school itself.

Finally, United Houma does not point to any procedural right to notice or show it was due any such notice prior to the sale of the Daigleville School.  Neither the Agreement nor the NHPA gives United Houma such a right or imposes an obligation on the School Board to provide notice to United Houma before selling the school.  At the TRO hearing, United Houma confirmed that there is no notice requirement contained in any of the relevant documents.[46]

In sum, United Houma does not have a vested property interest in the Daigleville School as would give rise to a due process right actionable under § 1983.  Therefore, United Houma's §

---

[44] R. Doc. 4-23 at 2.
[45] R. Doc. 10 at 18.  This arrangement was memorialized in the Court's minute entry.  R. Doc. 9 at 3.
[46] R. Doc. 10 at 6.

1983 claims against the School Board Defendants and Guidry must be dismissed under Rule 12(b)(6) for failure to state a claim.

**2. Violations of the Spirit and Public Policy of the National Historic Preservation Act**

United Houma argues that the sale of the property listed on the National Register of Historic Places contradicts public policy. Designation on the National Register does not create restrictions on a property owner's use of its property. Despite the prestige that may come with the designation, a "[l]isting of private property on the National Register does not prohibit under Federal law or regulations any actions which may otherwise be taken by the property owner with respect to the property." 36 C.F.R. § 65.2(b). It primarily functions as a planning tool to control the actions of *federal* agencies in relation to these properties. *Id.* § 65.2(c)(1) (emphasis added). The NHPA does not have teeth to curtail the rights of private owners with respect to a nationally designated private property.

This was clear in the correspondence sent to Martin inviting him to engage in the application process: "Listing on the National Register does not mean that limitations will be placed on the properties by the federal government. Public visitation rights are not required of owners."[47] The letter goes on to explain that the National Registry provides "a moral obligation, although not a legal one, to preserve the property."[48] Though the NHPA celebrates the historical significance of a landmark, it does little to preserve it by way of rights. Thus, the School Board Defendants' and Guidry's alleged violation of the spirit of the NHPA's public policy does not create a cause of action in favor of United Houma, and any such purported claim must be dismissed.

---

[47] R. Doc. 4-25 at 1.
[48] *Id.* at 2.

### 3. State-Law Claims

Section 1367(a) empowers a federal district court to hear in a civil action state-law claims that are related to an accompanying federal claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). However, § 1367(c)(3) permits a federal district court to decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction. In determining whether to retain jurisdiction over pendent state-law claims, the court should consider the four statutory factors set out in § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity, with no single factor being dispositive. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). As a general rule, the court should dismiss state claims when the federal claims to which they are pendent are dismissed. *Id*. at 161 (citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). "[B]ut this rule is neither mandatory nor absolute; no single factor is dispositive, and [the Fifth Circuit] review[s] the district court's decision in light of the specific circumstances of the case at bar." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

This case is in its early stages. With the dismissal of federal claims over which this Court had original jurisdiction, this case now contains only state-law claims. As such, and in the interests of judicial economy and comity, the Court declines to exercise its discretion to retain jurisdiction over these state-law claims, and they are dismissed without prejudice.[49]

---

[49] In its opposition memorandum, United Houma says that, if the Court finds that it did not state a constitutional claim, it is prepared to seek leave of court to file an amended complaint containing a RICO claim. Rule 15(a) allows a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002). Here, United Houma does not state that it seeks to cure deficiencies to its purported Fourteenth Amendment claim (which the Court finds futile in any event), but rather indicates that it would add an entirely new fraud-based quasi-criminal RICO claim.

IV.  **CONCLUSION**

Accordingly, for the reasons stated above,

**IT IS ORDERED** that the School Board Defendants' motion to dismiss (R. Doc. 28) is GRANTED.

**IT IS FURTHER ORDERED** that United Houma's federal claims under § 1983 and the NHPA against the School Board Defendants and Guidry are DISMISSED WITH PREJUDICE.

**IT IS FURTHER ORDERED** that United Houma's state-law claims against the School Board Defendants and Guidry are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 4th day of June, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

United Houma has already filed one amended complaint in an attempt to allege a federal claim. Justice does not require permitting another attempt. There is no reason that United Houma cannot file another suit alleging a RICO claim, if it can do so within the strictures of Rule 11. Accordingly, the motion for leave to amend is DENIED.